# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with a certain cellular telephone
assigned call number **(773) 968-5501** ("the SUBJECT
PHONE"): as more fully described in Attachment A.

)
)
)
)
)
)

Case No. _19-MJ-1353_

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use of a firearm during a crime of violence)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

___ATF Special Agent__Frank Rutter,___
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _12/2/19_____

_____
*Judge's signature*

William E. Duffin, US Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn on oath, on information and belief state:

## I.  INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(773) 968-5501** ("the SUBJECT PHONE") that is stored at premises controlled by Sprint, a wireless telephone service provider headquartered at 6100 Sprint Pkwy, Overland Park, KS 66211.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since 2015.  As an ATF Agent, I have conducted firearms trafficking investigations involving violations of 18 U.S.C. § 922(a)(6), commonly referred to as "lying and buying" as well as investigations related to the unlawful use and possession of firearms by previously convicted felons in violation of 18 U.S.C. § 922(g)(1).  Additionally I have conducted and participated in investigations involving violations of 18 U.S.C. § 924(c) (Use of a firearm in furtherance of crime of violence or drug trafficking crime).  I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and trafficking.  I have participated in the execution of search warrants in which firearms were seized; and I am familiar with the street name(s) of firearms and firearm related topics.

3. Based on the facts set forth in this affidavit, there is probable cause that Maurice Tolbert and Richard Tolbert conspired to commit and committed the armed robberies of multiple cellular phone stores between October 2, 2019 and October 29, 2019, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use of a firearm during a crime of violence). Additionally, there is probable cause that on or about October 7, 2019, and October 29, 2019, Maurice Tolbert possessed firearms after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g) (felon in possession of a firearm). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

4. This affidavit is based upon my training and experience, my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, surveillance videos, law enforcement surveillance, physical evidence recovered, and witnesses' statements that I consider to be reliable as set forth herein.

5. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.

## II.   PROBABLE CAUSE

6. On October 2, 2019, in the morning, an employee at the AT&T store located at 3543 South 27th Street, Milwaukee, Wisconsin, reported to the Milwaukee Police Department that at about 10:45 a.m. he had noticed a blue 4 door Hyundai Elantra backed in by a dumpster near the store. The car was occupied by two individuals who ducked down as he drove past them. Inside the store, the employee saw a black male approach the front door and attempt to open it. The employee stated that since a previous armed robbery on September 20, 2019, they keep the front

2

door locked and only open it for customers. The subject then turned and walked away in the direction of the Hyundai. The employee left the store and drove thru the parking lot. He saw the subject getting into the passenger door of the Hyundai. The employee took a photograph of the blue Hyundai with his cell phone as the car left the parking lot

7.     Based upon the witness description and the recovered surveillance footage, the driver was a black male, wearing black clothing and weighing approximately 240 pounds. The passenger was a black male, early 30's, 5'8" to 5'9" tall, approximately 200 pounds, dark complexion, wearing a white baseball cap, zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, black gloves, and a black sunglasses.

8.     On October 2, 2019, at approximately 7:49 p.m., two masked subjects entered the Sprint store located at 4550 South 27th Street, Milwaukee, Wisconsin. Subject #1 demanded an employee go to the back room of the store. Subject #2, armed with a black handgun, threatened the victims that if they moved he would shoot them. Subject #1 told Subject #2 to have the other victims moved into the back room. The subjects demanded the employee open the safe where the cellular telephones were kept. Once the safe was open, the cellular phones were placed into black garbage bags. The subjects fled. Sprint was a business involved in interstate commerce at the time of the robbery.

9.     Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was a black male, approximately 30 years of age, approximately 5'7" tall, approximately 365 pounds, heavy build, wearing a black hooded sweatshirt, gray pants, black shoes, gloves, and a black face mask. Subject #2 was described as a black male, approximately 25 years of age, approximately 5'10" tall, approximately 170 pounds, medium build, wearing a zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, gloves,

3

and a black mask. The firearm, which was brandished during the robbery, was described as a black, semi-automatic handgun.

10.　　Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured the subjects exiting from and fleeing in a blue Hyundai Elantra.

11.　　On October 7, 2019, at approximately 12:18 p.m., an armed and masked subject entered the Sprint store located at 1316 South 1st Street, in Milwaukee, Wisconsin. The subject was armed with a handgun. The subject demanded phones to be placed into the bag he produced. The subject ordered them to hurry or he would shoot. After the phones were placed into the bag, the subject fled and was observed entering a blue hatchback sedan parked in front of the store. Over 20 devices were taken in the robbery. Sprint was a business involved in interstate commerce at the time of the robbery.

12.　　Based upon witnesses' descriptions and the recovered surveillance footage, the subject is described as a black male, approximately 230 pounds, heavy build, wearing a black ski mask, black hooded sweatshirt, gray jogging pants and gloves. The firearm, which was brandished during the robbery, was described as a black semi-automatic handgun.

13.　　Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured a blue Nissan Versa parked in the area before the robbery, from which the subject exited. After the robbery, the subject returned to the vehicle and put the black garbage bag in the trunk. The subject then drove away. The rear of the Versa had the make and model identifiers covered.

14.　　On October 29, 2019, at approximately 11:34 a.m., two masked subjects entered the T Mobile store, located at 1528 South 108th Street, West Allis, Wisconsin. One subject was

4

armed with a silver and black handgun. The victims were forced into a back room of the store and told to lie down. A store employee was told to open the safe containing cell phones and another safe that contained cash. The phones were placed into black garbage bags. The cash, consisting of two $100 bills, two $50 bills, and rolls of quarters, was taken. The subjects then fled the store. T-Mobile was a business involved in interstate commerce at the time of the robbery.

15.     Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was described as a black male, possibly in his 30s, 5'8" to 5'9" tall, approximately 250 pounds, wearing a gray ski mask, dark navy blue puffy jacket, and gloves. Subject #2 was described as a black male, possibly in his 30s, approximately 6'0" tall, approximately 200 pounds, wearing a gray mask, dark clothing, and gloves. The firearm, which was brandished during the robbery, was described as a silver and black semi-automatic handgun.

16.     Responding squads tracked the subject vehicle, identified as a blue Hyundai Elantra, which fled at a high rate of speed when officers attempted to stop the vehicle. As squads pursued the Elantra, it crashed in the alley in the 1300 block of South 37th Street, Milwaukee. Richard Tolbert exited the front passenger door and attempted to flee on foot but had a physical injury and was taken into custody. After a police perimeter was established and officers conducted a search of the area, Maurice Tolbert was taken into custody hiding in some foliage at the rear of 1313 South 35th Street. Law enforcement recovered the key fob to the Elantra where Maurice Tolbert was hiding.

17.     The make and model emblems of the Elantra were covered with black electrical tape and a Wisconsin license plate, which was subsequently determined to have been reported as stolen, was attached over the Illinois plate registered to the Elantra, AZ-31096.

5

18.     Along the flight path of the Elantra, officers recovered a loaded Taurus G2C 9mm silver and black handgun, bearing serial number TMD66339. This firearm had previously traveled in interstate commerce.

19.     A Wisconsin State search warrant was executed on the Elantra. The items stolen from the T-Mobile were recovered in the trunk. Clothing, masks, and gloves consistent with the witnesses' descriptions and surveillance video in the T-Mobile robbery were located in the Elantra. Additionally, a black mask consistent with the masks worn in the October 2, 2019 and October 7, 2019 robberies was recovered from the Elantra. No personal cell phones were recovered.

20.     The listed owner to the Elantra was identified as L.G.  L.G. has reported to law enforcement that L.G. traveled with Richard Tolbert from Chicago to Milwaukee on three separate occasions in September and October 2019, including as recently as October 28, 2019, the day before the T Mobile robbery.  On each occasion, they drove to Milwaukee in L.G.'s Elantra. During their visits, they spent time at A.P.'s residence, discussed below, and Richard Tolbert's "uncle's" residence, "Tone."  Furthermore, during each visit, Richard Tolbert left in L.G.'s Elantra for several hours at a time with his cousin Maurice Tolbert.

21.     L.G. has identified Richard Tolbert as the suspect casing the AT&T store on October 2, 2019, and as the armed suspect in the October 2, 2019 robbery at Sprint.  L.G. has further identified Maurice Tolbert as the unarmed suspect in the October 2, 2019 robbery at Sprint and the armed robber in the October 7, 2019 robbery at Sprint.

22.     L.G. further reported that on the evening of October 28, 2019 (the night before the October 29, 2019 T Mobile robbery), L.G. saw Richard Tolbert in possession of a silver and black handgun, consistent with the one recovered and the one brandished during the October 7, 2019 and

6

the October 29, 2019 robberies. L.G. later learned, after talking to A.P., Maurice Tolbert's girlfriend, that A.P. was the registered owner of the handgun.

23.　　L.G. reported that Richard Tolbert was using cellular telephone number **(773) 968-5501** throughout the time period surrounding the aforementioned robberies. L.G. stated that Richard Tolbert brought the cellular telephone with this assigned telephone number with him when he traveled from Chicago to Milwaukee, but he would leave this phone with L.G. when he left with Maurice Tolbert during their visits to Milwaukee. When Richard Tolbert was arrested after the October 29, 2019 robbery, L.G. gave Richard Tolbert's sister Richard's cell phone and other personal belongings, including his jewelry.

24.　　Records show that the recovered handgun, the Taurus G2C 9mm pistol bearing serial number TMD66339, was purchased by A.P. on October 6, 2019, the day before the October 7, 2019 Sprint robbery in which a consistent handgun was brandished. A.P. purchased the handgun at Dunham's Discount Sports, at 2550 South 108th Street, West Allis, WI. The purchase records reflect that A.P. provided her address as 11XX South Layton Blvd., Milwaukee, Wisconsin.

25.　　Both Maurice Tolbert and Richard Tolbert have previously been convicted of felonies, and therefore, neither is lawfully permitted to purchase or possess a firearm.

26.　　On November 15, 2019, law enforcement officers executed a federal search warrant on the residence at 508 N. 28th Street, in Milwaukee. Various items of evidentiary value were recovered including, but not limited to, firearm boxes and records, ammunition, firearm magazines, cellular devices, and drug paraphernalia such as a "kilo press." Officers also recovered some of the clothing consistent with the clothing worn by one of the suspects in the October 2, 2019 robbery and the October 7, 2019 robbery.

7

27.     Additionally, A.P. was interviewed regarding her knowledge of and involvement in the criminal violations being investigated. During this interview, A.P. explained that she had purchased multiple firearms for her boyfriend, Maurice Tolbert, who she knew to be a convicted felon. Ultimately, A.P. admitted to purchasing at least five firearms for Maurice Tolbert. A.P. explained that she does not know how firearms operate, and would never have purchased a firearm on her own because she felt she did not need to own firearms. Maurice Tolbert accompanied her to the gun stores, selected the firearms, and provided the cash to purchase the firearms on all but two (2) occasions. Maurice Tolbert then was the primary owner of the firearm. A.P. explained instances when Maurice Tolbert would return home and state he had been robbed and someone had stolen his firearm which would lead to her purchasing another firearm for him.

28.     A.P. viewed still photos from the October 2, 2019 casing incident and robbery and the October 7, 2019 robbery. A.P. identified the suspect in the October 2, 2019 casing incident as someone who "favored" Richard Tolbert, although she had only seen Richard Tolbert on a couple of occasions. A.P. identified the firearm in the October 7, 2019 robbery as the firearm she purchased on October 6, 2019 from Dunham's for Maurice Tolbert.

29.     I submit that there is probable cause to believe that the records identified in Attachment B, which correspond to telephone number **(773) 968-5501**, are likely to constitute evidence of the above described crimes and Richard Tolbert's travel in the days before and after the aforementioned robberies. According to law enforcement databases, Sprint was the Provider for this telephone number during the time period at issue.

30.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the

8

locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

31. Based on my training and experience, I know that Sprint can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32. Based on my training and experience, I know that wireless providers such as Sprint typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this

9

information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users.

## **AUTHORIZATION REQUEST**

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34. I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (773) 968-5501, ("the Account"), that are stored at premises controlled by Sprint ("the Provider"), headquartered at 6100 Sprint Pkwy, Overland Park, Kansas 66211.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from September 1, 2019, through November 15, 2019:

a.    The following information about the customers or subscribers of the Account:

    i.    Names (including subscriber names, user names, and screen names);

    ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.    Local and long distance telephone connection records;

    iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.    Length of service (including start date) and types of service utilized;

    vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

     viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b.  All records and other information relating to wire and electronic (text)

communications sent or received by the Account, including:

    i.  the date and time of the communication, the method of the

communication, and the source and destination of the communication

(such as the source and destination telephone numbers (call detail

records), email addresses, and IP addresses);

    ii.  information regarding the cell tower and antenna face (also known as

"sectors") through which the communications were sent and received;

    iii.  stored historical text message content; and

    iv.  Per Call Measurement Data, if available.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18

U.S.C. §§ 1951(a), 924(c), and 922(g), during the period from September 1, 2019, through

November 15, 2019.